Problems with the Patent Office's rejection of these pending claims, but there are three key errors, at least with respect to the independent claims, that I'd like to talk about this morning. First, it was a mistake for the Patent Office to disregard the fact that the claims at issue refer to noise correlation estimates, or estimates of noise correlations, and instead break that compound noun, noise correlation, into two pieces so that they could treat them separately, finding correlation in one reference and then grafting the word noise back into that reference. I'm sorry to sort of jump in in the middle of your sentence there, but as you know, time is sort of fleeting. I'd just like to ask you, and this relates, I think, to the dependent claims, what exactly, in your view, is a propagation channel? Well, the propagation channel refers to the path that the signal takes as it passes from the transmitter to the receiver. So an estimate of the propagation channel is a term that refers to an estimate of what happens to that signal as it passes through the channel. So that includes a delay. It may also include things such as multipath, where the signal takes multiple paths. Bounces off buildings. Right, and you may get two versions or three versions or four versions. So the propagation channel is used to characterize that path. Now, the board said, I guess, as I understand it, at, I guess it's at 8-12, which I think is the decision in response to the petition for rehearing, that the examiner, in its view, had made out a prima facie case with respect to claims 6 and 29. That's what the board said. You disagree with that, right? Well, I do disagree with that, and I thought that that was the clearest error that the board made in its first decision, which is why I requested the rehearing in the first place. What do you think the examiner should have said in order to make out a prima facie case on this propagation channel issue? Well, if we look at the claim, the claim specifies that when you generate a noise correlation estimate, that you're generating a noise covariance matrix, or in this case, a noise correlation matrix, based on the propagation channel estimate. So he not only had to demonstrate where the reference showed the calculation of a noise correlation matrix, but he also had to show that that calculation was based on propagation channel estimates. Now, the examiner and the board, and the government's brief for that matter, completely ignored the term propagation channel estimates and make some statements about the noise correlation matrix. I disagree that the reference shows the noise correlation matrix either, but I think the clearest error there is that the propagation channel estimates are simply not there. Am I correct that that phrase, propagation channel estimates, is never mentioned by the examiner? That's correct. I'll let you proceed. No problem. Noise correlations, as I said, they should not have broken that into two parts. The second error they made with respect to the independent claims was that there's just a series of factual statements regarding what pseudorandom binary sequences are, how the person of skill in the art would interpret the term noise, and most of these are based on no evidence at all. Belatedly, the examiner in his answer to the board submitted a reference, Napier, that purports to support some of this factual statement, but in fact Napier says something different entirely. It says that pseudorandom binary sequences are sometimes used in commercial instruments and are transformed into something that looks like noise by a severe filtering operation. It clearly does not say that pseudorandom sequences are noise. It does not say that pseudorandom binary sequences include noise, and it by no means teaches that the skilled person... To what extent is the examiner considered one of skill in the art? I think that's a difficult question, and I don't really know the answer to that. Certainly the examiner can generally be assumed to be conversant in the art, but in this particular case, this area of technology, this level of ordinary skill in the art is very high. I deal with these inventors on a frequent basis, and they're PhDs who spent decades in advanced signal processing technology. So I think while an examiner may be able to follow technical references, the examiner is not the kind of person that would be producing this kind of source material that we're dealing with. So anyway, that's the second key point is that the factual statements made throughout the record are simply not based on, in most cases, any evidence at all, and the one citation to evidence really doesn't support any of this position. I understand that you don't think Napier is good, but don't two of the things that you cited, Ashley and Wang, suggest that pseudorandom code is similar to noise in your patent? I've got it mixed up, maybe. No, I mean, both of them talk about sampling for noise, and I think Ashley talks about noise can be either predictable or unpredictable, and it seems to me like predictable noise sounds an awful lot like your pseudorandom binary code. Well, I think predictable noise is somewhat a contradictory term. I think I would characterize noise as being non-deterministic, which means that you can't, from one time to the next, you can't tell what the value of that noise is going to be. Now, in a large sense, you can make some predictions about the nature of that noise. You can characterize, for example, the bandwidth that you expect that noise to occupy. You can characterize the range in values that it's expected to have, but you can't predict the value of that noise at any given time, and that's a critical distinction between noise and a pseudorandom binary sequence, and, in fact, that's why the pseudo is in the term pseudorandom binary sequence in the first place. If it's not noise, you can predict the value of it from one instant to the next, and, in fact, RUSLE, the primary references detector, relies on the fact that it knows, it has a copy of the pseudorandom binary sequence. That's what it's using to figure out what data was intended to be sent. Would random jamming of a signal be noise? Random... In jamming, and in CDMA in particular, you do choose pseudorandom sequences that are very long because it is very hard to predict them. It's not that they're completely unpredictable, but it's hard to predict them, and they have wide bandwidth, like noise. So, yes, you often use high power, wide bandwidth, signals that look like they are random, pseudorandom. True random noise is difficult to generate, and that's why Napier talks about, you know, let's start with a pseudorandom binary sequence, and we can filter it very heavily, and we get something that looks like noise, at least for some purposes. Now, none of that has anything to do with Russell's detector, because Russell is not looking for noise-like properties in this received signal. Russell is trying to determine which of the specific pseudorandom codes it already knows about is in the signal at any given time. I'm still not really quite sure how different that is from your image, and I understand it's not pseudorandom code, but isn't what's going on still that, in yours, there's some kind of pilot signal, and can you take that pilot signal and compare it to what's coming in and filter out all the noise using that? How different is that than knowing what the pseudorandom code is and then pulling that out and getting the signal? Well, Russell's patent describes a correlation-based detector, which is similar to those that are used in many, many CDMA-type devices, cellular phones, and so on. The application issue is dealing with communications receiver, and particularly with CDMA communications receiver. The difference is that Russell is concerned with the detection process. So Russell is describing a detector that is trying to figure out what signal was present in that noise, and it happens to use what's called a correlator to pull that signal out. Mr. Wallen's application, on the other hand, isn't worried at the moment with the detection process at all. What his concern is is that in these very advanced receivers, it's important to get a very accurate estimate of what the noise is all by itself. And that's used for a number of things, including deciding exactly how loud the transmitter needs to be, how much data you can squeeze through the channel, and so on. If it's very noisy, then you turn up the volume. Just to finish that point, so Wallen's claims and the application are dealing with the processing of noise, or the estimation of noise, completely distinct from the process of correlation detection. It just so happens that the properties that you're using... But if we give your claim the broadest possible meaning, like the Patents Office is supposed to do, it doesn't seem to foreclose Russell's pseudomerendous code. In fact, you were given the opportunity to address that during the prosecution, and you said, well, no, it's not the same, but you didn't amend to specifically put that in the claim. Well, I didn't amend, because I don't think that Russell discloses generating a noise correlation estimate. Russell's circuit produces an output that actually estimates the data that was put into the transmitter at the beginning of the chain. It doesn't even estimate the pseudorandom binary sequence. Just as a matter of fact, the examiner is incorrect when he says that Russell's circuit estimates the pseudorandom binary sequence. It doesn't. It compares a pseudorandom binary sequence to the received signal, determines whether it is there, and then from that it can conclude what data was meant to be sent. Thank you. May it please the Court, Mr. Humler's argument focused on saying that he disagreed with the examiner and the board, but he didn't offer any evidence that they were wrong. Correct yourself to 6 and 29, which we discussed. Explain how Russell alone discloses all the limitations of 6 and 29. As Mr. Humler pointed out, the two limitations are having a correlation matrix and that it's based on a propagation channel. The matrix, using the broadest reasonable interpretation, is just a collection of data. Russell shows using a collection of data as a matrix and based on the propagation channel also is not defined in the specification. And to the extent that it is not intended language, Russell discloses that the data is based on a channel, could be any medium. So given that that's a broad claim, Russell discloses that language. It's never mentioned by the examiner or by anyone else on the government side, the phrase propagation channel estimate. The board found that the examiner made a primatization case. Additionally, the board found that the Russell's correlation matrix could be applied to any channel, any media which is transmitting. I understand that that's the key quote and that's on page 12 of the board's rehearing decision, but that seems like that's the first time it's addressed. And that doesn't cite to anything in the examiner's decision, does it? So it seems like you're relying on a statement made for the board for the first time on rehearing. How is that remotely supported by substantial evidence? Although the board doesn't... I guess the board does cite to the examiner's answer on pages 19 and 20. That's 19 and 20 of our appendix? Sorry, no. That's 19 and 20 of the answer, which is 221 and 222. Well, and that's the citation to the fact that it discloses a correlation matrix to generate noise estimates, but it doesn't say anything, even in that answer, about how that relates to propagation channel estimates. It may be that the board statement is correct, that it's just drawing a further factual conclusion from that answer, but it doesn't seem to be based on the examiner's factual conclusions. I would also draw attention to the original board decision. Where are you in the appendix? Oh, sorry. It's still the re-hearing decision, which also discusses that it is a statement of intended use, Where are you in the appendix? This is the re-hearing decision? Well, it's in our briefing on 18 where we discussed the fact that Is that anywhere in any of the board's decisions? That seems to me like an argument that you come up with for the first time on appeal. I understand that, honestly, it all sounds like that's right to me, but I don't see anywhere in the examiner's, in the record, where there's a factual finding that supports any of those statements. So it seems like you're asking us to affirm what's a substantial evidence question based upon a re-hearing decision by the board and your argument on appeal. Put another way, is, in effect, Michelle, is this a new ground for rejection by the board? I don't believe it's a new ground of rejection by the board. I mean, the board is still relying on the examiner's findings and the examiner's reasoning. I mean, it's what you're saying, that the matrix, the correlation matrix that Russell discloses to generate noise estimates is the same thing as getting rid of noise in propagation channels. Well, honestly, this technology is very difficult, but the problem here is the board's, the examiner and the board until re-hearing don't address propagation channel estimates at all, right? You agree with that? Those words don't appear, as far as I can tell, in anything until the board's second decision. So how do we know that a correlation matrix in Russell has anything to do with propagation channel estimates? I see a point. The board and... I'm not trying to be difficult here. I don't understand this technology, so you have to explain to me why it's automatic to get from a correlation matrix and noise estimates to propagation channel estimates. It doesn't seem clear to me. I mean, clearly I'm not a person of ordinary skill. I'm not quite either, but I don't have a Ph.D. in this technology. I think the board, you know, they did deal with the debenting claims and they found that the examiner's findings, you know, they incorporated all of those findings. I mean, to get to propagation channel estimates... I mean, I don't want to take up too much of your time on it, but bottom line, basically they said this correlation stuff gets rid of noise. That must be the same as correlation propagation channels and dealing with getting rid of noise in those two, and that's good enough. That's all we have, isn't it? I mean, I think just the plain language based on propagation channel estimates doesn't add anything, and Juan had mentioned in his specification that the propagation channel estimates are based on reference channel, and in Russell we clearly have the use of a reference channel, so I think that is an obvious step to take. I think Representative Claim 1 claims a simple three-step process where we have generating a correlation estimate, calculating an error term, and subtracting that error term. The claim doesn't specify how the final noise estimate is used in the system. It doesn't limit noise. It doesn't provide a definition for those terms. Could you address what your colleague was saying right at the end of this argument? I think he was making a distinction between Russell's pseudo-random code, which is inserted there, and it's pretty close to noise, but it's still wrong. Again, his noise claims are generated to true noise, which I take it to mean is random. Is that a distinction that makes any difference? I don't think that one ordinary skill in the art would make that distinction. I think noise is interpreted more broadly than that, and even in preparing this argument I was looking at the IEEE definition of noise. It had like 13 definitions, so I don't think that he can say that noise is just true random noise. I think if he wants a specific definition of noise, he had to include that in the specification. So your position is taking the broadest reasonable meaning of this claim, even if there's a difference between truly random noise and pseudo-random noise, and Russell, his claim includes both truly random noise and pseudo-random noise. Because he didn't just claim the pseudo-random noise. I think his claim includes both, and Russell also speaks about using pseudo-random binary code, but also other things. So I don't think that Russell is still showing the use of an unwanted component of the signal, of something added to the signal, which obscures the true data that you're sending, which I think is the broadest reasonable definition of noise. Unwanted component of the signal. Are there any further questions? Thank you. You have three and a half minutes, Jerome. First, just very quickly, the government first process, and I think it's only... Can I just turn you to the propagation channel, because that's really what's troubling me. It really does seem like the board's explanation came up late in the game, but I want to know what your response is to the board's conclusion, assuming that there was factual evidence supporting it, how you would say that that's not right. Frankly, the board's statement regarding propagation channel estimates is unintelligible to me. It makes no sense to me. There is no intended use. The phrase about how it corrects errors in transmission has no relationship to any of the references. And it simply does not address the point that there is not in any of the references a calculation... Maybe you can help me out by explaining what your claim means with regards to propagation channel. I think I understand what the board is saying, but I'm not sure how I link what they're saying up with what you think your language about propagation channels claims. Well, WALEN specification describes how to calculate that correlation matrix that you start with, which is your initial noise correlation estimate. And it shows a calculation that includes a little hat on top. So those parameters, H, which is a matrix of parameters, those are the propagation channel estimates, and those are a specific input into a very specific calculation of the noise correlation. You can find that in the specification. It's a little hard to parse sometimes because it's not written for people like me. But you can see, for example, in paragraph twenty-eight, there's equation five shows how... I'm sorry, A031. Equation five shows the calculation of YK minus H hat, where H hat is the propagation channel estimate. And that feeds forward into equation 7A. Well, actually 7A shows how those propagation channel estimates are calculated in the first place. And this gets to another point I want to make. The government complains that there's no definition of noise or no definition of noise correlation in the specification. I would disagree. It's not laid out in terms for the layperson, but these calculations very clearly, and for example, equation five showing where the noise sample comes from in the first place, very clearly communicate to the skilled person what the inventor is talking about. So, and back to claim six. You know, Russell, as I say, doesn't describe a correlation matrix at all and certainly doesn't show computing one based on propagation channel estimates. And then finally, the point on claim one is really that nobody's claiming noise here. The term at issue is the noise correlation. That's the object that should be analyzed here. And the patent office refused to do that despite the fact that the specification uses that compound noun, noise correlation, over and over again, despite the fact that references cited by the examiner use that same phrase to refer to something that clearly the skilled person in the art knows what it is. Thank you very much.